Filed 11/5/21  Allen v. Wells Fargo Bank CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DEVRA ALLEN, | B306815 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV18719) |
| v. | |
| WELLS FARGO BANK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Devra Allen, in pro. per, for Plaintiff and Appellant.

Snell & Wilmer, Michele Sabo Assayag, Joshua K. Partington for Defendants and Respondents.

## INTRODUCTION

This anti-SLAPP case is the latest in a decade-long line of litigation relating to a real property located at 6150 Shenandoah Avenue in the Ladera Heights neighborhood of Los Angeles, and the personal property located within that residence. According to a statement of decision in a previous litigation, Ivan Rene Moore or one of his corporations purchased 6150 Shenandoah in the mid-1990s, and operated a music business from the residence. The title to 6150 Shenandoah was later transferred to Ronald Hills, who worked with Moore and held the property in trust for the benefit of Moore's corporations. Moore met Kimberly Martin-Bragg, who lived next door; the two became romantically involved and began living together. Martin-Bragg bought 6150 Shenandoah in 2004; she rented it to Moore, who continued to use the property for his music business. Moore and Martin-Bragg had separated by 2011, and Martin-Bragg evicted Moore from 6150 Shenandoah.

Some of Moore's personal property was left at 6150 Shenandoah when Moore and Martin-Bragg separated, including the equipment in Moore's recording studio. In a previous litigation, a jury held that Martin-Bragg improperly converted some of this personal property when she evicted Moore. However, around the same time, Moore and his companies defaulted on a loan held by Wells Fargo. Wells Fargo obtained a judgment of replevin in federal court that allowed it to collect certain personal property that had been pledged as collateral for the loan. Working with the U.S. Marshal and with the cooperation of Martin-Bragg, Wells Fargo collected Moore's property from 6150 Shenandoah, including a motorcycle, a piano, computers, and various recording studio equipment, and

2

arranged to sell the property at auction. Wells Fargo proved to the federal court's satisfaction that the replevined property belonged to Moore.

Moore has challenged Martin-Bragg's actions and Wells Fargo's entitlement to the replevined property so vigorously that he has been named a vexatious litigant in the Los Angeles Superior Court (LASC); the United States District Court, Central District of California (Central District); and the United States Bankruptcy Court. After Moore's numerous lawsuits were unsuccessful and the vexatious litigant orders required Moore to post significant bonds before suing again, Ronald Hills—who once held the title to 6150 Shenandoah—filed suit against Wells Fargo and others, alleging that some of the replevined property was actually his. The defendants in that action successfully struck Hills's complaint with an anti-SLAPP special motion to strike under Code of Civil Procedure section 425.16,[1] and the decision was affirmed on appeal.

In the instant case, appellant Devra Allen also sued Wells Fargo and others, contending that some of the replevined property was hers. Again, respondents Wells Fargo Bank, N.A.; Asset Reliance, Inc.; Craig Hansen; and Edward D. Testo (the bank defendants) successfully struck the complaint with an anti-SLAPP motion under section 425.16. The superior court held that the bank defendants' actions were protected activity under section 425.16, and Allen failed to demonstrate a probability of

---

[1] "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

prevailing because her claims were barred by issue preclusion and judicial estoppel.

We affirm.  Under the first step of the anti-SLAPP analysis, the bank defendants' actions in collecting on the replevin judgment were protected activity.  Under the second step of the anti-SLAPP analysis, Allen cannot show a probability of prevailing because she has not provided a record on appeal sufficient to make such a finding, and the record before us supports the court's determination that Allen's claims are barred by issue preclusion.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Previous litigation*[2]

1.  *Unlawful detainer, quiet title, and conversion of the personal property*

In April 2011, Martin-Bragg filed an unlawful detainer action against Moore, alleging that Martin-Bragg owned 6150 Shenandoah, Moore was a tenant there, he had not paid rent since October 2010, and he owed Martin-Bragg over $50,000 in past-due rent.  (*Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 371.)  This case was assigned LASC case number BC459449. Moore alleged in his answer "that he and Martin-Bragg had been longtime domestic partners; that the property at 6150 Shenandoah Avenue is rightfully owned by Moore, a few corporations he uses in his music business, and Ronald Hills, the corporations' secretary; that the property had been in his family

_____

[2] Much of the information summarized here is gathered from the documents the bank defendants submitted with their requests for judicial notice in the superior court.  As discussed in Discussion section A, *infra*, on our own motion we judicially notice those documents on appeal.

4

long before his relationship with Martin-Bragg; that title to the property had been held by Mr. Hills, and the property had been used by Moore over the years as collateral for business loans of over $5 million; and that in 2004 Mr. Hills had transferred title to Martin-Bragg in trust as a business arrangement for the benefit of Moore and his corporations, not for Martin-Bragg's personal use or benefit." (*Martin-Bragg v. Moore, supra,* 219 Cal.App.4th at p. 371.)

On June 20, 2011, Moore filed a complaint seeking quiet title to 6150 Shenandoah and other causes of action; this case was assigned LASC case number BC464111. (*Martin-Bragg v. Moore, supra,* 219 Cal.App.4th at p. 372.) The unlawful detainer court denied Moore's request to consolidate the two cases, and eventually entered judgment for Martin-Bragg in the unlawful detainer case, BC459449. (*Id.* at p. 372, 382-383.)

Our colleagues in Division One of this District reversed the unlawful detainer judgment, holding that "the trial court abused its discretion in refusing Moore's request to consolidate the unlawful detainer and quiet title actions for trial and that Moore was prejudiced by being forced to litigate the complex issue of title to the property under the summary procedures that govern actions for unlawful detainer." (*Martin-Bragg v. Moore, supra,* 219 Cal.App.4th at pp. 370-371.) Resolution of the unlawful detainer case following remand is not entirely clear in the record on appeal; a court order from a later litigation stated that Martin-Bragg dismissed the unlawful detainer case following remand.

On December 20, 2011 Moore and Hills filed another action for quiet title against Martin-Bragg and others, LASC case

5

number BC475551. The case was consolidated with Moore's earlier quiet title case, BC464111.

On March 2, 2012, Moore filed a case for trespass to chattel, conversion, negligence, and damages under Civil Code section 1965[3]; this case was assigned LASC case number BC480013. The case was deemed related to BC464111. On May 2, 2012, Moore filed another action against Martin-Bragg for rights stemming from their domestic partnership; this case was assigned LASC case number BC483652. The case was consolidated with Moore's earlier conversion case, BC480013.

On October 9, 2012, the superior court in BC464111, the quiet title action, declared Moore a vexatious litigant under section 391.

Moore's claims against Martin-Bragg for trespass to chattel, conversion, and Civil Code section 1965 in case BC480013 (consolidated with BC483652) were tried to a jury in July 2013. The jury found that Martin-Bragg improperly maintained possession of Moore's "clothing, shoes, kitchen equipment, and other personal property"; a piano; "[o]ne or more of the following: automobiles, 1 motorcycle, auto tools, auto parts"; "Recording console SSLK"; "Music, Sound, and Recording Equipment"; "Musical Instruments"; and "Masters." In determining damages, the jury determined that the fair market value of Moore's personal property was $2.5 million, and his lost profits amounted to $650,000. The jury recommended that the damages award be reduced by $2.5 million if Martin-Bragg

---

[3] Civil Code section 1965 prohibits a landlord from refusing to surrender a tenant's property that has been left on the premises.

6

returned Moore's personal property. An interlocutory judgment was entered in November 2013. The court noted that the judgment was interlocutory "due to the bifurcation of pending causes of action unrelated to Plaintiff's personal property. However, the judgment is enforceable."[4]

A six-day bench trial commenced on October 5, 2015 for some of the remaining claims in BC475551 and BC464111, the consolidated quiet title actions. In its statement of decision, the court found that "Martin-Bragg was credible and truthful, while Moore and Hills were not." The court continued, "The testimony by Moore and Hills was unconvincing, frequently misleading, and often appeared to be deliberately untruthful. The Court has no confidence in their testimony or version of the facts. Moore and Hills represented themselves during trial, and their lack of personal credibility has infected all of their evidence." The court found that documents purporting to transfer 6150 Shenandoah from Martin-Bragg to Moore, Moore's companies, and Hills were fraudulent. The court quieted title to 6150 Shenandoah in favor of Martin-Bragg, and canceled the fraudulent transfer documents. The court found in favor of Martin-Bragg on all of Moore's and Hills's claims. Division One of this court affirmed the judgment. (*Moore v. Martin-Bragg* (Oct. 25, 2019, B272445) [nonpub. opn.].)

In April 2016, Moore's remaining causes of action in the conversion action, BC480013, were dismissed with prejudice as a

---

[4] In March 2014, Martin-Bragg filed for chapter 11 bankruptcy in the United States Bankruptcy Court, Central District of California. The court dismissed the action in June 2015.

terminating sanction. The court found that in several different cases, Moore had used "false, fraudulent and forged documents" including quitclaim deeds, a power of attorney, an affidavit, a real estate counter-offer, a lis pendens, and a trust deed. The court also stated that Moore had argued contradictory facts supported by conflicting evidence, "choosing whatever version of the facts suits his purposes at the time." The court stated, "Moore's conduct has been serious and deliberate. He has manufactured false evidence in the present case against Martin-Bragg, an earlier case against Martin-Bragg, and a third case against an unrelated party. Moore and his co-party Ronald Hills have interfered with the presentation of evidence and defied a lawful court order to provide a necessary fingerprint comparison. Moore has caused altercations at a deposition and in court proceedings, such that a bailiff is necessary to preserve order. Moore has filed repeated statements of disqualification on the same grounds, without seeking appellate review. And he has repeatedly made disrespectful references to the trial Judge and other Judges of the Superior Court, as well as opposing counsel. These actions are not a mere slight or irritation; they seriously interfere with the proper functioning of the judicial process."

In May 2016, the court entered final judgment in the consolidated conversion and domestic partnership actions, BC480013 and BC483652. The judgment included damages from the jury verdict in favor of Moore against Martin-Bragg for $3,150,000, and dismissal of all of Moore's additional claims as a terminating sanction. Our colleagues in Division Five of this District affirmed the judgment. (*Moore v. Martin-Bragg* (Sept. 8, 2017, B276366) [nonpub. opn.].)

2.      *Federal litigation, including Wells Fargo's breach of contract action and other parties' bankruptcies*

Meanwhile, Wells Fargo sued Moore and three of Moore's companies for breach of contract, replevin, and foreclosure in the United States District Court, Eastern District of Wisconsin, apparently resulting from a loan default. The record on appeal includes only the May 11, 2015 judgment, and no other information about the case. We will refer to this as the replevin judgment.

The caption page of the replevin judgment listed Moore as both a defendant and a third-party plaintiff; the list of third-party defendants included Martin-Bragg. The court entered judgment "in favor of the Plaintiff Wells Fargo Bank, N.A. and against the Defendants Rufftown Entertainment Group, Inc., Radio Multi Media, Inc., Rene Moore Music, Inc., and Ivan Rene Moore on Wells Fargo Bank, N.A.'s claims for breach of contract (Count I and II), replevin (Count III), and foreclosure (Count IV), in the sum of $7,106,037.28." Default was entered against all defendants except Moore. The court awarded Wells Fargo costs and fees "as provided for in the loan documents." The judgment allowed Wells Fargo to foreclose upon two properties in Milwaukee "known as the Radio Station Properties," and to "replevin the intangible property, personal property, royalties, profits, and other collateral pledged by the defendants." Moore's counterclaims were dismissed, and his third-party complaint was dismissed "as frivolous." Wells Fargo then filed a notice of judgment lien against Moore and the other defendants with the California Secretary of State.

In September 2016, Martin-Bragg filed for chapter 7 bankruptcy. In December 2016, Wells Fargo moved for relief

9

from the automatic stay, stating that it had a perfected security interest in certain personal property based on the replevin judgment. The personal property at issue included a vehicle and the "personal property of Ivan Rene Moore, Radio Multi-Media, Inc., Rufftown Entertainment Group, Inc., and Rene Moore Music, Inc."

Moore opposed Wells Fargo's motion in Martin-Bragg's bankruptcy, stating that "issues regarding this subject property are on appeal at the California Court of Appeal." Moore argued that the property at issue did not belong to Martin-Bragg, and therefore the bankruptcy court did not have jurisdiction over it or any issues regarding its ownership. Moore also stated that "some of the property listed" belonged to "other persons and corporate entities not related to [the] Wells Fargo purported loan." Moore stated that the property was owned by "the Moore family, Ronald Hills Solid State Logic," and "others." Hills also submitted a declaration stating that "[a] large amount of the property listed is in fact my property not Mr. Moore's." The bankruptcy court granted Wells Fargo's motion in January 2017.

In February 2017, Wells Fargo filed a request for a writ of execution relating to the replevin judgment in the Central District; we will call this the collection action.[5] In March 2017, Wells Fargo filed an ex parte request for an order instructing the

_____

[5] There appear to be two different case numbers associated with Wells Fargo's collection of the replevin judgment in the Central District: CV-2:16-MC-0093 and 2:17-CV-02312-VAP-JEM. The request for an order to levy was filed under one case number, while the order granting the request and the documents thereafter bear a different case number. The reason for the change is not apparent in the record.

10

U.S. Marshal to levy upon the personal property of the judgment debtors located at 6150 Shenandoah. The request stated that Martin-Bragg was willing to cooperate with the U.S. Marshal to remove the property from the residence. On March 27, 2017, the Central District granted the request, and ordered the U.S. Marshal to "levy upon any and all personal property listed in the document attached hereto as Exhibit '2,'" located at 6150 Shenandoah and belonging to Moore or his companies. (Exhibit 2 is not included in the record on appeal.)

On June 8, 2017, Wells Fargo filed a notice of levy in the collection action, stating that in April 2017, the U.S. Marshal "levied upon the personal property of Judgment Debtors in accordance with" the court's order. An 11-page list of the property collected was attached to the notice; it included studio recording equipment, CDs, paperwork, master recordings, and a motorcycle. No personal effects such as clothing or jewelry were included on the list.

Wells Fargo also filed a motion seeking an order to sell the judgment debtors' personal property. Wells Fargo said it had compiled a "list of certain items of personal property which it believes can be sold in a commercially reasonable manner through a noticed auction." Well Fargo intended to have Asset Reliance, Inc. administer the auction.

Moore filed a request to vacate the levy order, which the court denied. Hills also filed oppositions and a third-party claim, stating that in LASC case BC480013, a "[j]ury found and ruled that the recording property (West Viking Recorders) belongs to Hills," and that Moore "had the right to possess" the property but was not the owner. (Notably, neither the interlocutory judgment nor the final judgment in case BC480013 suggests any findings

11

relating to Hills's ownership of property.)  Hills also stated that he owned "the majority of the subject properties seized by Wells Fargo."  A party named "AC Cotton" also filed a third-party claim in the collection action requesting "release of all of his personal properties" from Wells Fargo.  Cotton stated that he "stored and placed his personal properties which are the subject of this litigation in possession or custody of Mr. Moore at the Shenandoah property," and Wells Fargo was currently in possession of the property.[6]

The Central District ultimately denied the oppositions and third-party claims, but required Wells Fargo to "file an inventory of items seized at [Martin-Bragg's] residence and a verification that the only items seized are those on the list in Exhibit 5 of the Request for Judicial Notice . . . .  Wells Fargo also must submit a brief and documentation regarding ownership by the judgment debtors of the items seized."  The court noted that "the declarations of third parties who claim to own the subject property are deficient or irrelevant. . . . Mr. Hills and Mr. Cotton claim to be the owners of some of the personal property at issue but only identify one or two items each and do not present any documentary, admissible evidence that they own any of the property.  Moore mentions other people that purportedly own some of the property but presents no declarations or proof from these other people, named and unnamed."

---

[6] The property Hills claimed was his included a 1969 Camaro, computers and software, speakers, microphones, tapes and masters, keyboards, and other recording equipment.  The property Cotton claimed was his included a piano, a motorcycle, computers and software, tapes and masters, a keyboard, and other recording equipment.

On June 16, 2017, Wells Fargo filed an "inventory and verification of items seized," which stated that Wells Fargo had "reviewed the Collected Property and confirmed that all of the personal property collected is personal property of the Judgment Debtors, and, further, was an Authorized Item of personal property listed for seizure in the Order re: Levy." The inventory and verification included a table listing the items seized, with references to a request for judicial notice and declaration of Martin-Bragg for each item. Martin-Bragg stated in her declaration that to the best of her knowledge, "the Collected Property levied and seized on April 20, 2017, was owned by Judgment Debtors."[7]

The Central District found on June 27, 2017 that "Wells Fargo complied with the Court's June 8, 2017 Order by filing the requested inventory and verification (Dkt. 37) supported by a Request for Judicial Notice (Dkt. 38) and a declaration. (Dkt. 39)." The court issued an order allowing for the sale of the property and allowing Asset Reliance to administer the auction. Moore appealed the orders issuing writs of execution, and the Ninth Circuit Court of Appeals affirmed, stating, "The district court did not clearly err in determining that the items levied upon by the U.S. Marshal were the personal property of Moore or his companies." (*Wells Fargo Bank, N.A. v. Rufftown Entertainment Group, Inc.* (9th Cir. 2018) 719 Fed.Appx. 664.)

3. *Litigation against Wells Fargo*

Hills, in propria persona, filed a verified complaint in the Central District in May 2017 against Moore, the U.S. Marshal,

_____

[7] As discussed in Discussion section A, *infra*, we grant Allen's request for judicial notice of this document.

and most of the defendants named in the instant action:  Wells Fargo; Asset Reliance; Craig Hansen, a Wells Fargo employee; Edward D. Testo, an Asset Reliance employee; and George Barbour, Kimberly Martin-Bragg's spouse.  Hills alleged 10 causes of action including a violation of 42 United States Code section 1983, violations of constitutional rights, conversion, and intentional and negligent interference with prospective economic advantage.  Hills alleged that he and Moore "were and are colleagues and business associates in various businesses, opportunities and ventures, including but not limited to music production, recording, managing, leasing, investing, and other business opportunities."  Hills alleged that after Martin-Bragg evicted Moore from 6150 Shenandoah, she and Barbour refused to return Hills's property to him.  Hills alleged that Asset Reliance, as an agent of Wells Fargo, had possession of the property.  He asserted that the parties conspired to deprive him of his property, and requested more than $300 million in compensatory damages, plus punitive damages.  In June 2018, the Central District granted the defendants' motions to dismiss for failure to state a federal claim upon which relief can be granted and lack of jurisdiction over the remaining state claims. (See *Hills v. Wells Fargo Bank, N.A.* (C.D. Cal., June 28, 2018, CV 17-3373 MWF (FFM)) [nonpub. opn.].)

Moore, in propria persona, filed a similar verified complaint in the Central District on June 30, 2017 against the U.S. Marshal, Wells Fargo, Asset Reliance, Hansen, Testo, and Barbour.[8]  Moore alleged that he and Hills operated "various

---

[8] This was not Moore's first federal case involving this matter. Moore filed a complaint against Martin-Bragg, several

businesses, opportunities, and ventures" from "a multi-million dollar music production studio located in Mr. Moore's and Mr. Hills' home and office" at 6150 Shenandoah. Moore argued that much of the property used in the businesses was not subject to the replevin judgment, and therefore the defendants improperly seized the property. Moore requested more than $480 million in damages.

In May 2018, the Central District declared Moore a vexatious litigant and dismissed his case. In the order, the court noted that "the issue of [Moore's] ownership of the personal property at issue here already ha[s] been resolved against him repeatedly in several prior actions and, thus, is barred from re-litigation in this case by the doctrine of res judicata. [Moore's] attempt to avoid the res judicata effect of these prior lawsuits by proffering here factual assertions that directly contradict those he made in the prior lawsuits, not only is ineffective to avoid the res judicata doctrine but raises substantial concerns under Rule 11 of the Federal Rules of Civil Procedure."

Moore filed a voluntary chapter 11 bankruptcy petition on August 3, 2017; the bankruptcy court later converted Moore's case to chapter 7. In the same case, Moore commenced an adversary proceeding in November 2017 by filing a complaint alleging 15 causes of action against Wells Fargo, Asset Reliance, Hansen, Testo, Martin-Bragg, Barbour, and others. Moore sought $531 million in damages. Moore later dismissed his

LASC judges, and others on October 13, 2015. (See *Moore v. Rosenblatt* (C.D. Cal., Apr. 19, 2016, 2:15-cv-08021-ODW-GJS).) This action was dismissed, and the Ninth Circuit Court of Appeals affirmed the dismissal. (*Moore v. Rosenblatt* (9th Cir. 2019) 749 Fed.Appx. 604.)

adversary complaint, but the court retained jurisdiction to consider sanctions.

In June 2020, the bankruptcy court deemed Moore a vexatious litigant. In its order, the court noted that the "Complaint in this adversary proceeding is the fourth time Moore has alleged claims against Wells Fargo challenging the validity of a Wells Fargo Loan or challenging the validity of a $7.1 million judgment entered against him in favor of Wells Fargo following a default on that loan." The court also stated, "Before the filing of his Complaint in this adversary [proceeding] on November 3, 2017, Moore had filed ten complaints, counterclaims or third-party complaints, in pro se, in the United States District Court for the Eastern District of Wisconsin, the United States District Court for the Central District of California and in this Court." The bankruptcy court stated, "Moore is a vexatious litigant having repeatedly filed meritless claims to harass Wells Fargo and delay its collection efforts."

On July 13, 2018, Hills filed a complaint in LASC against Moore, Wells Fargo, Asset Reliance, Hansen, Testo, Martin-Bragg, Barbour, and the U.S. Marshal; it was assigned LASC case number BC713791. On July 18, 2018, Hills filed an ex parte application seeking a temporary restraining order to prevent Wells Fargo from selling what he claimed was his property.

In support of Hills's request, the plaintiff/appellant in the instant case, Devra Allen, submitted a declaration dated July 17, 2018 stating that she had worked "at the studio" at 6150 Shenandoah, where she and others "maintained the books and records regarding the purchase of the subject property." Allen further stated, "The property listed for sale via auction is the same property that is or was at the 6150 Shenandoah property

16

that belongs to Mr. Hills. . . . There were also more property items that are not shown for auction sale that were purchased by Hills." A second request for a temporary restraining order was filed on July 23, 2018 in the same case; Allen submitted a similar declaration signed July 20, 2018. In this second declaration, Allen stated again that the property up for auction "belongs to Mr. Hills," and "[t]here was also more property than is shown for auction sale." Allen also added, "I have personal knowledge that the property was purchased by Mr. Hills or one of his DBA companies, G & S Electronics and or West Viking Records." The court's orders on the ex parte requests are not included in the record on appeal.

Wells Fargo, Asset Reliance, Hansen, and Testo (the bank defendants in the instant case) filed a special motion to strike Hills's complaint under section 425.16. Wells Fargo also apparently sought sanctions on the basis that Hills's complaint was frivolous. In response to the motion for sanctions, Allen submitted a third declaration stating that from 1998 to 2012, "I stored my personal properties and business properties at the 6150 Shenandoah property." Without notice, Martin-Bragg evicted Allen and others who worked at 6150 Shenandoah, and "I was unable to remove my personal properties and business properties." She stated, "Some of [the] personal properties and business properties are included in the List Wells Fargo Bank, N.A., provided to the court," but she did not identify which property was hers. Allen stated that her property was not subject to the Wells Fargo lien or replevin, and that she was planning to sue Wells Fargo.

The court granted the bank defendants' anti-SLAPP motion on May 13, 2019. It found Wells Fargo's "judicially-authorized

17

levy upon personal property for enforcement of a judgment is conduct in furtherance of the right of petition." The court further held that Hills's claims were barred by issue preclusion because his contentions "depend upon a finding that the property levied upon and listed in the complaint is actually his," but "the federal courts have already decided the issue, and ruled that it belongs instead to Defendant Moore." The court granted the bank defendants' request for $12,824.00 in attorney fees, but denied the request for sanctions. Division One of this court affirmed the ruling. (*Hills v. Wells Fargo Bank, N.A.* (Sept. 24, 2020, B297438) [nonpub. opn.].)

On November 1, 2019, the superior court dismissed the remainder of Hills's action on the basis that it was a sham. The court noted that the bank defendants were no longer in the case following the anti-SLAPP motion, Martin-Bragg and Barbour had been dismissed following a demurrer, and the U.S. Marshal had never been served. Thus, "[t]he only two real, active parties left are Hills and Moore. And the plain fact is that they are not, and never have been, actually adverse to one another." The court noted that although Hills had named Moore as a defendant, the complaint made no substantive allegations against Moore, Moore never filed an answer, and Hills did not seek his default. The court noted that Allen had "recently filed a case against Wells Fargo and Martin-Bragg, alleging that the property levied upon was actually *hers*." Moore served multiple discovery requests, and his "subpoenas appear to be designed to bolster [Allen's] case" or to "gather evidence for future contempt motions against Martin-Bragg." The court also stated, "It seems for all the world as though Moore's presence as a defendant was a tactical decision made to enable Moore to prosecute the case without having to

18

pass the hurdle of a pre-filing order." The court concluded, "This litigation in its present form, as between Hills and Moore, is a sham. It has become merely another bid for leverage in this long drama between Hills, Moore, Martin-Bragg, Wells Fargo, and their various attendants." It appears that Hills did not appeal the dismissal.

B. *This action*

1. *Allen's complaint*

On May 30, 2019—approximately seven years after she was allegedly barred from 6150 Shenandoah, and two weeks after the anti-SLAPP motion was granted in Hills's case—Allen filed a verified complaint against the bank defendants; Martin-Bragg; Barbour; Bruce Millett; and The Desk Doctor, Incorporated, Inc. Allen alleged that she "worked as a contractor/investor for various artists and corporations" at 6150 Shenandoah. Martin-Bragg "locked [Allen] out" of the property, "and subsequently took dominion and control of [Allen's] personal and business property." In April 2017, each of the other defendants "wrongfully exercised dominion and control over the personal property and business property." Allen attached to the complaint a list of the property she alleged was hers, including electronics and recording equipment such as computers, a tape recorder, various microphones, speakers, and two electric pianos; it also included personal items such as legal documents and contracts, two Rolex watches with diamonds, women's clothing and shoes, "family items," fur coats, and children's clothing.

In the first cause of action for conversion, Allen alleged that each defendant wrongfully "exercised dominion and control" over Allen's property, and that she was not indebted to any of the defendants. In the second cause of action for intentional

19

misrepresentation, Allen alleged that each defendant "made a knowing and intentional false representation to plaintiff and to other third parties that Plaintiff's personal property and business property belong [*sic*] to Wells Fargo Bank, N.A." and/or was subject to the replevin action. In the third cause of action for "fraud/deceit," Allen alleged that each of the defendants "knowingly made [the] false representation that Plaintiff's personal property and her business property are subject to Wells Fargo Bank['s] judgment when defendants knew that to be false." She further alleged that the defendants acted with malice, fraud, or oppression. In her fourth cause of action for trespass to chattels, Allen alleged that the defendants "interfered with plaintiff's possessory interest in her personal property and business property." In her fifth cause of action for replevin, Allen alleged that defendants had been in control of her property since April 2017. Allen prayed for damages of $2.5 million, plus punitive damages, attorney fees, and costs.

### 2. *The bank defendants' anti-SLAPP motion*

The bank defendants filed a special motion to strike under section 425.16, asserting that Allen was "acting as a strawman for Ivan Rene Moore" to get around the vexatious litigant restrictions. They argued that Allen's complaint arose from Wells Fargo's exercise of its constitutionally protected rights to collect on the replevin judgment against Moore. The bank defendants also asserted that Allen could not demonstrate a probability of prevailing on her claims. They contended Allen's claims were barred by the following doctrines: judicial estoppel, because Allen had stated in earlier declarations that the replevin property belonged to Hills, not her; issue preclusion, because ownership of the replevin property had already been adjudicated;

20

the statute of limitations, because Allen alleged she had been without her property since 2012; and the litigation privilege, because the bank defendants' litigation actions were protected. The bank defendants filed a request for judicial notice with their motion, which included background information regarding the prior litigations.

Allen apparently opposed the motion, but her opposition is not included in the record on appeal. According to the bank defendants' reply, Allen's opposition "provide[d] no analysis concerning the elements necessary [under] the Anti-SLAPP Statute." The reply also reiterated the bank defendants' arguments in favor of striking the complaint under section 425.16. The bank defendants objected to a declaration and the request for judicial notice Allen filed with her opposition, but neither the declaration nor the request for judicial notice are in the record on appeal.

The record does not include a reporter's transcript from the hearing on the special motion to strike. The superior court took the matter under submission. In a written ruling, the court stated that the "actions taken by Wells Fargo and its agents are protected activities which are subject to an anti-SLAPP motion. Defendants meet their burden. The burden then shifts to the plaintiff." The court found that "Allen does not demonstrate a probability of prevailing on the basis of res judicata [citation] and judicial estoppel." As to res judicata, the court noted that Allen submitted declarations regarding the ownership of the replevin property in support of Hills's action, and "[t]he court entered judgment in favor of Wells Fargo after considering all the evidence, including Ms[.] Allen's declarations." As to judicial estoppel, the court stated that Allen "participated in prior

21

actions, filing declarations completely contradictory to the position she has taken in the instant action." The court therefore granted the bank defendants' motion.[9]

Allen timely appealed. (See §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

## DISCUSSION

A.    *Judicial notice*

Before addressing the parties' contentions on appeal, we address the scope of the evidence we rely upon for our analysis. Much of the history of litigation summarized above is set forth in documents attached to the bank defendants' requests for judicial notice filed in the superior court, which are included in the respondents' appendix on appeal.[10] The record does not indicate whether the superior court granted the bank defendants' requests for judicial notice. The bank defendants, citing only their anti-SLAPP motion, represent in their respondents' brief that the superior court took judicial notice of certain "actions" (identified by case number; the list does not include Hills's LASC action, BC713791) and certain docket entries (which also do not

---

[9] Allen later filed a lawsuit in the Central District against a similar group of defendants. The Central District granted a motion to dismiss on claim preclusion grounds based on the court's ruling in this case. (*Allen v. Partington* (C.D. Cal., Oct. 9, 2020, No. LACV2006793VAP (JEMx).)

[10] In her reply brief, Allen contends that "[t]he [e]xcerpts of documents" in the respondents' appendix "were not part of the record in the lower court." She does not specify which documents were not before the superior court. Her contention appears to contradict the record; the documents are attached to the bank defendants' various requests for judicial notice, which each bear a filing stamp.

22

include Hills's LASC action). The bank defendants do not reveal whether the superior court granted their requests for judicial notice of certain documents, and the court's written order on the anti-SLAPP motion does not mention the bank defendants' requests for judicial notice.

A "reviewing court shall take judicial notice of . . . each matter properly noticed by the trial court." (Evid. Code, § 459.) However, "[t]o obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order." (Cal. Rules of Court, rule 8.252(a)(1).) "The motion must state: (A) Why the matter to be noticed is relevant to the appeal; (B) Whether the matter to be noticed was presented to the trial court and, if so, whether judicial notice was taken by that court; (C) If judicial notice of the matter was not taken by the trial court, why the matter is subject to judicial notice under Evidence Code section 451, 452, or 453; and (D) Whether the matter to be noticed relates to proceedings occurring after the order or judgment that is the subject of the appeal." (Cal. Rules of Court, rule 8.252(a)(2).) The bank defendants did not file a request for judicial notice in this court.

The extensive litigation background is relevant to the superior court's issue preclusion and judicial estoppel findings, and therefore it is relevant to our analysis. Thus, on our own motion we take judicial notice of the documents submitted with the bank defendants' requests for judicial notice in the superior court, to the extent those requests consist of court records of previous litigations. (Evid. Code, § 452, subd. (d) [a court may judicially notice the "record of . . . any court of this state" or "any court of record of the United States"].) We note, however, that we "take judicial notice of the existence of judicial opinions and court

23

documents, along with the truth of the results reached—in the documents such as orders, statements of decision, and judgments—but cannot take judicial notice of the truth of hearsay statements in decisions or court files, including pleadings, affidavits, testimony, or statements of fact." (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7.)

With her reply brief, Allen filed a request for judicial notice of eight documents. The motion does not state whether the documents were presented to the trial court or whether judicial notice was taken by the court. The bank defendants have not opposed her request.

It appears from the record on appeal that three of Allen's documents were submitted to the superior court. Exhibit 3 is a list of what Allen claims is her property; a version of this list is included with Allen's complaint. Exhibit 4 is the replevin judgment, and Exhibit 8 is the Central District's June 23, 2017 order for sale, both of which are included in the bank defendants' requests for judicial notice. We grant Allen's request for judicial notice of these documents. (Evid. Code, §§ 452, subd. (d), 459.)

Additional documents in Allen's request for judicial notice consist of a discharge order from Moore's bankruptcy case (Exhibit 1); a list of the property Hills alleged was his, which according to Allen was filed with Hills's complaint in BC713791 (Exhibit 2); Martin-Bragg's opening brief in the appeal from the conversion judgment, LASC case BC480013 (Exhibit 5); and Martin-Bragg's declaration in the collection action, which was filed in support of Wells Fargo's verification of ownership of the items seized (Exhibit 6). The record on appeal does not reveal whether these documents were filed in the superior court. Reviewing courts do not typically take judicial notice of evidence

24

not presented to the lower court absent exceptional circumstances. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) These are all documents filed in various litigations, however, and because the litigation background is relevant here we grant judicial notice of Exhibits 1, 2, 5, and 6. (Evid. Code, §§ 452, subd. (d), 459.)

Allen's Exhibit 7 is Martin-Bragg and Barbour's responses to discovery propounded in Hills's LASC case, BC713791. There is no indication these discovery responses were filed with the court or became part of any court record. In general, "discovery responses . . . are not a proper matter for judicial notice." (*TSMC North America v. Semiconductor Manufacturing Internat. Corp.* (2008) 161 Cal.App.4th 581, 594, fn.4.) Judicial notice of this document is therefore denied.

B.      *Legal standards under section 425.16*

"Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity. (§ 425.16, subd. (b)(1).) Unless the plaintiff establishes a probability of prevailing on the claim, the court must grant the motion and ordinarily must also award the defendant its attorney's fees and costs." (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 320.) "The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies both prongs of the anti-SLAPP statute—

i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.) The appellate court therefore engages "'in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step.'" (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.) Even when the standard of review is de novo, however, the appellant bears the burden of demonstrating error. (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920.)

C.      *Allen's causes of action arise from protected activity*

Under section 425.16, an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e).) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) "Under the first step of the anti-SLAPP analysis . . . it is the defendant's acts that matter. [Citations.] If the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887.)

26

The basis for Allen's contentions is that the bank defendants, while collecting on Wells Fargo's replevin judgment against Moore through the collection action, improperly took control of Allen's property. Our Supreme Court has held that actions taken to collect on a judgment are protected activity. In *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 (*Rusheen*), an anti-SLAPP case, the Supreme Court considered whether "postjudgment enforcement efforts, including the application for writ of execution and act of levying on property, [are] protected by the [litigation] privilege." (*Id.* at p. 1052.) The court reasoned that "since a party may not be liable" for its actions in obtaining a judgment, "the party should likewise be immune from abuse of process claims for subsequent acts necessary to enforce it." (*Id.* at p. 1062.) The court found that the litigation privilege applied, and the special motion to strike had been appropriately granted.

The reasoning of *Rusheen* applies here, and Allen does not contend otherwise. Instead, she argues that her property was not subject to the replevin judgment, and the bank defendants cannot "demonstrate that [Allen's] complaint for conversion [of her] personal property and business property . . . somehow interferes with [the bank defendants'] rights or litigation privilege, [so] they have not satisfied the first prong" of the anti-SLAPP test. She contends that even if Wells Fargo had a right to collect on the replevin judgment against Moore, Allen is not a judgment debtor and the bank defendants had no right to seize her property. Allen cites no legal support for these contentions other than *Rusheen*, which she cites for general anti-SLAPP principles.

Allen mistakes the nature of the first step, which is met if "the defendant's conduct by which plaintiff claims to have been injured" falls within a protected category. (*Equilon Enterprises v.*

27

*Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 66.)  Here, the bank defendants' conduct consisted of collecting on the replevin judgment, which is protected activity. Allen's argument, in essence, is either that Wells Fargo made a mistake of fact when collecting the replevin property, or that Wells Fargo's actions were not supported by sufficient evidence of Moore's ownership. Neither contention is relevant to the first prong of the section 425.16 analysis.

Allen also asserts that "the anti-SLAPP statute does not apply to her claims because [the bank defendants'] alleged conduct fell within the 'illegal as a matter of law' exception" in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*).  In *Flatley*, the Supreme Court stated that if the "defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id*. at p.320.)

The bank defendants assert that Allen forfeited this argument by failing to assert it in the superior court.  (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591 ["'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court'"].)  Because Allen's opposition is not included in the record on appeal, we cannot determine whether she asserted this argument below.  Even assuming the argument has not been forfeited, however, it is unpersuasive.  In support of her contention, Allen asserts that the bank defendants' attorney "admitted" in a bankruptcy proceeding "that he and [the bank defendants] took personal property that did not belong to the judgment debtors."  She cites the cover page of a 40-page

28

transcript of a meeting of creditors during Moore's bankruptcy, which is included in her appellant's appendix on appeal. The transcript is not attached to any document filed in the superior court, and the record gives no indication whether this transcript was filed in the court below. A reviewing court considers "'only matters which were part of the record at the time the judgment was entered.'" (*Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at p. 444, fn.3.)

Regardless, the substance of the transcript does not support Allen's position. The only comment by the bank defendants' counsel at the hearing consisted of a statement that a motorcycle was included in the replevin property, and a title search showed that the motorcycle had never been registered. This is not an "admission" that the bank defendants "took personal property that did not belong to the judgment debtors," as Allen contends. Such a statement by a party's attorney under the circumstances does not constitute a concession or conclusive evidence that the assertedly protected speech or petition activity was illegal as a matter of law as required by *Flatley*. Despite Allen's allegations, "conduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910-911.)

The bank defendants met their burden to show that Allen's causes of action arose from protected activity. The burden therefore shifted to Allen to demonstrate a probability of prevailing.

D.    *Allen has not demonstrated a probability of prevailing*

In the second step of the anti-SLAPP analysis, the "burden shifts to the plaintiff to demonstrate the merit of the claim by

establishing a probability of success." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater Union*).)  In making this determination, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)  The second step is a "'summary-judgment-like procedure,'" in which the court considers "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.)  "[A] plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Sweetwater Union, supra*, 6 Cal.5th at p. 940.)

Here, the superior court found Allen failed to meet this burden on two grounds: issue preclusion and judicial estoppel.  On appeal, Allen contends the superior court erred in reaching these conclusions.  However, Allen has not provided a record on appeal sufficient to support her contentions.

Allen submitted two appendices on appeal: one with her opening brief and one with her reply brief.  Neither appendix includes Allen's opposition to the bank defendants' anti-SLAPP motion.  No declarations or other documents indicate what evidence Allen submitted to the superior court.  The superior court sustained eleven objections to Allen's declaration and six objections to Allen's request for judicial notice, but the record on appeal includes neither the declaration nor the request for judicial notice.

Because Allen has not provided a record showing what information was before the superior court, she cannot

demonstrate that she met the second step of the anti-SLAPP analysis by establishing a probability of success. "The cardinal rule of appellate review is judgments and orders of the trial court are presumed correct and prejudicial error must be affirmatively shown. [Citation.] The appellant . . . has the burden of providing an adequate record, and the failure to provide an adequate record for meaningful review requires the issue to be resolved against the appellant." (*Truck Insurance Exchange v. Federal Insurance Company* (2021) 63 Cal.App.5th 211, 224.) Allen has not met that burden here.

Moreover, considering the limited record before us, including the evidence we have judicially noticed, the superior court did not err in finding that Allen's claims are barred. The superior court stated that "Allen does not demonstrate a probability of prevailing on the basis of [issue preclusion]."[11] The court stated that "the Hills Action concerned a determination of the ownership interests in the Replevin Property," and "Ms. Allen filed declarations in support of Mr. Hills' attempts to thwart collection; thereby, participating in the Hills' litigation. The court entered judgment in favor of Wells Fargo after considering

---

[11] The court referenced "res judicata," and cited *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 866, which observed that "[c]ollateral estoppel is a distinct aspect of res judicata." However, California courts "now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) Because claim preclusion necessarily involves the same parties from an earlier litigation (see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*), and Allen was not a party to an earlier litigation, only issue preclusion is relevant here.

all of the evidence, including Ms[.] Allen's declarations." Allen asserts that the superior court erred, because she was not in privity with a party in an earlier action.

Issue preclusion "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) "[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)

Allen challenges only the fourth prong of the issue preclusion test, arguing that she "was not a party or in privity with parties to the prior proceeding." Privity "refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights.'" (*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n* (1998) 60 Cal.App.4th 1053, 1069.) "[P]rivity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit. [Citation.] A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's ""virtual representative"" in the first action." (*DKN Holdings, supra*, 61 Cal.4th at p. 826.) When one party was not a party to the prior litigation, we "focus on their relationship to the party and the subject matter of the litigation, asking whether their interests are so close to identical that the nonparty should have reasonably expected to be bound by the

prior judgment even though not a party." (*Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1163.)

Here, Allen's and Hills's allegations were identical: Wells Fargo improperly collected certain property from 6150 Shenandoah that did not belong to the judgment debtors. They both asserted these contentions even though Wells Fargo's rights to the replevin property had been confirmed in multiple proceedings. Indeed, some of the property on Allen's list of property and Hills's list seemed to be the same, such as a Lexicon 224xl; Neumann U47, AKG C 12, and AKG 414 microphones; and Ampex ATR recorders with various head stacks. Allen participated in Hills's case by filing declarations stating that the improperly levied property was Hills's, even though she was also claiming some of that property as her own. After most of the defendants had been dismissed from Hills's case, that court noted that Hills and Allen's interests were so intertwined that Hills and Moore appeared to be using Hills's case to conduct discovery to be used in Allen's case. The evidence is sufficient to find privity.

Most of Allen's arguments consist of challenging the replevin judgment and the Central District's orders in the collection action. For example, Allen contends the superior court "cannot give full faith and credit" to the "order or judgment of the United States District Court," because Allen "had no notice of the proceeding." She argues that she was deprived of her due process rights under the United States Constitution because she was not Wells Fargo's debtor and she did not receive adequate notice of the federal actions. The bank defendants assert that the court's ruling does not run afoul of the full faith and credit clause.

"Full faith and credit must be given to a final order or judgment of a federal court." (*Levy v. Cohen* (1977) 19 Cal.3d

33

165, 172.) "Courts often speak of applying full faith and credit to a [federal or] sister state's judgment in order to implement res judicata principles." (*Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387, 1393.) Here, however, the superior court's issue preclusion ruling referenced Hills's LASC action, not the federal cases against Moore. Whether Allen had notice of the federal actions against Moore is irrelevant to the court's holding.

Allen's additional attempts to undermine the federal courts' rulings are similarly unpersuasive. Allen asserts repeatedly that she was not Wells Fargo's debtor and should not be bound by its judgment against Moore. She also argues that Wells Fargo "employed Kimberly Martin-Bragg to give [a] False Declaration to establish" that Moore and his companies owned the replevin property. Allen asserts that this false declaration was refuted by Martin-Bragg's appellate brief filed following the judgment in BC480031, and in her responses to discovery filed in other litigations. Allen further asserts that Wells Fargo "orchestrated unconscionable schemes to deceive this Court and the United States District Court through callous and willful misrepresentations directed at the judicial machinery in their schemes to deprive Plaintiff Devra Allen" and others of their property.

However, Allen may not collaterally attack the replevin judgment or collection action orders through a state court proceeding. "The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition." (*Martin v. Martin* (1970) 2 Cal.3d 752, 761.) Where "the substantive question" in a litigation "has been finally determined" by a federal court—as Wells Fargo's rights to collect the replevin

34

property has been determined here—"[s]uch order can be . . . challenged solely by way of direct attack in the federal court; it may not be collaterally attacked in the instant state proceeding." (*Id.* at p. 762.) Moreover, Allen's arguments rely on her contentions that Martin-Bragg's statements in other court documents were false. As noted above, although we may judicially notice court records, we do not judicially notice the truth or falsity of any out-of-court statements made in those documents. (*Williams v. Wraxall, supra*, 33 Cal.App.4th at p. 130 fn. 7.)

Based on the record before us, the superior court did not err in finding privity for purposes of issue preclusion, and Allen has not demonstrated a probability of success.[12]

E.    *Evidentiary objections*

Allen further asserts that the superior court erred in sustaining the bank defendants' objections to her evidence without conducting an evidentiary hearing. She argues that the court "excluded material evidence which demonstrated that Wells Fargo Bank and its agents knew that the personal property they converted belonged to Appellant, Devra Allen and other[s]. . . ."

The lack of an adequate record prevents any meaningful analysis of this contention. Allen asserts that the court should not have sustained the bank defendants' objections to her request for judicial notice, but the request for judicial notice is not in the record on appeal. Allen also argues the court erred in sustaining

---

[12] Because the record cannot support reversal and we find no error in the court's finding on issue preclusion, we do not reach Allen's contention that the superior court erred in finding that her claims were also barred by judicial estoppel.

"Respondent's Objection to Plaintiff's evidence 2-8, 10, 15, 16 & 17," which apparently referenced the bank defendants' objections to Allen's declaration. However, the declaration is not in the record on appeal. We cannot consider Allen's contentions when the relevant documents are not before us.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.